INTERNATIONAL BOW & STERN DOCK CO. v. UNITED STATES.

(Circuit Court, D. New Jersey. March 16, 1894.)

1. CONTRACTS—INTERPRETATION—TECHNICAL TERMS—ADJUSTABLE.

A contract to construct an "adjustable stern dock" does not require a dock which is automatically adjustable, but one which is adjustable by cutting away and filling in its gates so that they will conform to the contour of the hull of the vessel; especially where the term is treated as a technical one, and the experts agree upon that definition of it.

2. SAME—PERFORMANCE—TEST—DEFAULT.

The last installment under the contract for the construction of such dock was to be paid after a satisfactory test with a vessel to be furnished by the government and approved by the contractors, within a specified time. The offer of one vessel approved by the contractors was withdrawn, and others were offered, and were not approved, because they were not of the class contemplated by the parties when the contract was made, and hence no test was made. *Held*, that the contractors, on making formal tender of the dock after the time for a test had expired, were entitled to such last installment.

At Law. Action by the International Bow & Stern Dock Company against the United States.

Davison & Chapman and Julian B. Shope, for plaintiff.
Henry S. White, for the United States.

DALLAS, Circuit Judge. This suit was brought by petition of the International Bow & Stern Dock Company, filed under and in pursuance of the act of congress approved March 3, 1887, entitled "An act to provide for the bringing of suits against the government of the United States." To this petition the United States, by Henry S. White, Esq., the United States attorney for the district of New Jersey, duly made answer in writing, and thereupon, on February 20, 1894, the cause was, in accordance with said act, tried by the court without a jury. The evidence adduced, and the arguments of counsel, have since been fully considered, and this opinion is now filed under the terms of the seventh section of the same statute.

### First. Specific Findings of the Facts.

(1) The petitioner and the United States entered into a written contract, dated February 25, 1889, by which the former agreed to deliver at the naval station, Key West, Fla., within six months from the date of the contract (excluding the months of July, August, and September), in accordance with the plans and specifications thereto appended and made part of the contract, "one adjustable floating stern dock," for the sum of $30,000, to be paid in certain specified installments as the work progressed, and by a final payment of $3,000, to be made "upon the delivery of the dock, ready in all respects for use, after a satisfactory test, to the commanding officer of the naval station at Key West, Fla." The only portion of the "specifications" to which it is necessary to refer is in these words:

"Dock to be tested where built, or at Key West, at the option of the government. A suitable vessel, approved by the contractors, to be furnished by the government at the port where dock is to be tested, within two months after being notified that dock is completed, and ready to be tested. Dock to be delivered at Key West, and to be at contractor's risk while in transit. Satisfactory test to mean placing the dock under stern of the ship furnished, and removing the water down to the keel. Officers and crew of the vessel to render proper assistance. Contractors to be allowed to build on government land, and to have the use of tools and machinery belonging to the government at the naval station where built, free of cost to them. Coal and water for testing purposes to be supplied by the government."

(2) Apart from the matters of fact reserved for separate statement in the following paragraphs of these findings, the petitioner complied with the said contract, and did and performed all things on its part to be done and performed according to the provisions thereof; and it was paid by the government the sum of $30,000, which was the total amount agreed to be paid to it, with the exception of the final balance of $3,000, which, under the terms of the contract, was to be paid upon delivery and satisfactory test of the dock. The government has the actual possession of the dock, but has always refused, and still does refuse, to "accept" it. This unpaid balance of $3,000 constitutes the petitioner's claim in this suit.

(3) The structure erected by the petitioner under the contract is, in fact, an "adjustable floating stern dock." It is a dock which is "adjustable" according to the meaning of that word as used in the contract.

(4) On May 3, 1890, the petitioner notified the United States, in writing, that the dock was at Key West, "completed and ready to be tested," but it has been admitted that the time for testing was extended, and that at the expiration of the last period of extension, to wit, in January, 1891 (no testing having been made), the dock was formally tendered, and demand made for payment of the balance of $3,000, which was refused.

(5) Within the period allowed for testing as aforesaid, the government offered to furnish any one of four specified vessels, either of which, as it claimed, and still claims, was a "suitable vessel" to be used for testing. One of these vessels, but not any of the others, was "approved by the contractors." The vessel approved was the Baltimore. It was offered by Rear Admiral Gherardi, whose orders were that he was to supply a ship of his squadron, to be docked for the final testing of the dock. This offer was, however, not acted upon, because it was withdrawn in pursuance of an order of the secretary of the navy, who deemed it inexpedient to employ the Baltimore in the manner proposed. No more particular reason was assigned, or has been shown, for this withdrawal. The declination of the plaintiff to approve any other of the vessels which were offered by the government was not capricious, groundless, or unreasonable. In addition to the Baltimore, the Philadelphia and the Chicago were designated by the plaintiff as vessels which it was willing to approve. The dock (as had been contemplated by both parties) was constructed with especial and immediate reference to a certain class of vessels. Those which were offered and refused were not of that class, and to have prepared the dock for testing under any one of them would have involved the plaintiff in very considerable expense for necessary adjustment and ballast.

### Second. Conclusions of Law.

1. That the correct construction of the contract in suit, with regard to the only question which has been raised on that subject, is that the dock was to be "adjustable," not automatically, but by cutting away and filling in the gates so as to conform their

outline to the contour of the hull of any vessel proposed to be docked.

2. That the plaintiff having duly offered the dock for testing, and the government having failed, during the time limited by the contract as extended, to furnish for that purpose any vessel which the plaintiff approved, or was bound to approve, and the plaintiff having, at the expiration of that time, formally tendered the dock, the latter did all that, under the circumstances, it was necessary for it to do to entitle it to the final payment of $3,000, and to the judgment in its favor to be rendered at the conclusion of this opinion.

### Third.    General Observations.

The material portions of the contract in suit are, I think, sufficiently set out in the first finding, but the contract itself is in evidence, and may be treated as embodied in that finding, should it be deemed requisite to examine it at length in any proceedings to ensue upon the entry of the present judgment.    The facts stated in the second finding have not been set forth with greater particularity, because no question has been made with respect to them, except that on the trial the point was made on behalf of the government that the dock lacked about two inches of the height requisite for docking two or three of the largest vessels of the navy.    This allegation, however, if sustained by clear and positive evidence (which it is not), would not, under the circumstances, justify me in reversing or modifying the finding that "the petitioner complied with the said contract," etc.    The contract contains no stipulation that the dock should be of sufficient height to accommodate the particular vessels referred to.    The height of the dock as built is precisely "in accordance with the plans and specifications."    The latter expressly specified, "Depth inside, over keel blocks, 22 feet 6 inches," and it is not asserted that the dock in question does not meet this requirement.    Having complied with the terms of its contract, nothing more can now be demanded of the plaintiff as a condition precedent to the right of recovery.    The fact is that this point was made for the first time upon the trial.    It was not suggested when the several payments on account were made, and it is plain that, as testified by Commodore Farquhar, chief of the bureau of docks and yards, the only reason for refusing payment of the balance now sued for was that there had been no test of the dock.    The real and only substantial question in the case, as I have already indicated, is as to whether the plaintiff was justified in refusing to approve the only vessels which the government offered for testing the dock, and upon this question I have no doubt whatever.    The dock was constructed, as I have said, with a view to being tested by a particular class of vessels, and in view of this fact those which were offered were not "suitable," and were rightfully and in good faith rejected by the plaintiff.    There were others which he was willing to accept, but no one of these was tendered, although the time fixed by the contract within which the test was to be made was greatly extended, and there is no evidence which would warrant the imputation that

the dock, if tested, would be found faulty or defective. The learned United States attorney also took the position, on the trial, that the dock tendered is not an "adjustable" one, and the question thus raised is really as to the correct construction of the contract in this regard, for as to the actual construction of the dock there is no dispute. The interpretation of writings is, even in cases tried with a jury, ordinarily for decision by the judge, and, hence, is commonly said to be matter of law; but this deduction is not accurate. The true subject of inquiry when a document is to be construed is the meaning of the parties as ascertainable from the language which they have used in the instrument; and this is plainly not a question of law, but of fact, though one of those incidental questions of fact, the solution of which is confided to the court, and not to the jury. This is said in explanation of the fact that this matter is covered by both the third finding of fact and the first conclusion of law. I deem it proper to add to those brief statements a very few words by way of elaboration. The dock as built is certainly not automatically adjustable, but by simple, though costly, changes in its gates, which are so made as to provide facilities to that end, it may be in such manner altered, without affecting its other and principal parts, as to fit (adjust) it to receive vessels of different sizes and varying forms. If I were to confine myself to a consideration of the contract alone, I would be of opinion that such a structure meets the description of an "adjustable" dock; but the case was tried, in this respect, on the theory that the word "adjustable," as here used, is a technical term, and therefore for definition by witnesses familiar with the art to which the contract relates. Accordingly, expert testimony was, without objection, received to interpret it, and the accomplished officers of the navy who were examined on behalf of the government, quite agreed with the expert witnesses called by the plaintiff, that the dock in question is such a one as, by persons versed in the art, is understood to be adjustable.

During the trial some objections were interposed upon either side to the admission of evidence. The evidence was received without passing upon the objections, and the question presented in each instance was reserved for consideration at this time; but, as the facts found do not to any extent depend upon evidence to the reception of which any objection was made, it is not necessary to extend this opinion by embodying in it any formal rulings upon such objections.

### Fourth. Judgment of the Court.

And now, March 16, 1894, it is ordered and adjudged that judgment be entered for the petitioner, the International Bow & Stern Dock Company, and against the United States, for the sum of $3,000.

NOTE. The matter was not presented by counsel, but I understand section 1091, Rev. St., to apply to this case, and therefore have not allowed interest on the claim "up to the time of the rendition of judgment."